IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

THOMAS CURETON,                         )
                                        )
            Petitioner,                 )
                                        )
vs.                                     )        Case No. 19-cv-1107-DWD
                                        )
UNITED STATES OF AMERICA,               )
                                        )
            Respondent.                 )

MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter comes before the Court on Petitioner Thomas Cureton's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc 37; Doc. 1). Petitioner challenges his 444-month sentence imposed in two criminal cases which were consolidated for trial and sentencing. *United States v. Cureton*, SDIL Case No. 10-30106-DRH-1 (hereinafter referred to as the "Drug Case" or "Case 106"); *United States v. Cureton*, SDIL Case No. 10-30200-DRH-1 (hereinafter referred to as the "Ransom Case" or "Case 200"). Following multiple appeals, the Seventh Circuit Court of Appeals affirmed Petitioner's 444-month sentence on April 10, 2018. *United States v. Cureton*, 887 F.3d 318, 319 (7th Cir. 2018). For the following reasons, the Motion will be denied.

**Factual and Procedural Background**

On November 17, 2010, a federal grand jury returned a superseding indictment charging Petitioner with five drug and weapon charges, including: four counts of distributing crack cocaine near a school in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and

1

860 (Counts 2-5) and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 1) (Case 106, Doc. 42).

Also on November 17, 2010, a federal grand jury returned a separate indictment charging Petitioner with one count of interstate communication with intent to extort in violation of 18 U.S.C. § 875(a) (Case 200, Doc. 1).  On April 20, 2011, a superseding indictment was returned charging Petitioner with four charges: one count of interstate communication of ransom request in violation of 18 U.S.C. § 2 and 875(a) (Count 1), two counts of possession of  a firearm in furtherance of a crime of violations in violation of 18 U.S.C. § 2 and 924(c) (Counts 2 and 4), and one count of attempted extortion in violation of 18 U.S.C. § 2 and 1951(a) (Count 3) (Case 200, Doc. 31).

Attorney, John D. Stobbs, II represented Cureton at trial in both cases.  Initially, the two cases proceeded separately, with the Ransom Case proceeding before Judge Murphy and the Drug Case before Judge Stiehl.  However, after the grand jury returned Cureton's superseding indictment in the Ransom Case adding the two firearm charges, Attorney Stobbs sought to consolidate the two cases for trial (Case 200, Doc. 37). According to Attorney Stobbs, the new 18 U.S.C. § 924(c) charges each carried mandatory consecutive sentences, which Stobbs believed significantly increased Petitioner's risk in the Ransom Case (Doc. 11-4, at ¶¶ 24, 31-36).  In his motion, Stobbs also described the significant overlap of facts and witnesses between the cases, the government's intention to introduce 404(b) material against Cureton, and judicial economy (Case 200, Doc. 37).

Judge Murphy initially denied the motion on May 2, 2011 (Case 200, Doc. 45). However, on May 5, 2011, the Drug Case was transferred from Judge Stiehl to Judge

Murphy (Case 106, Doc. 97), so Stobbs moved to reconsider the denial of the motion for consolidation, again citing the overlap between the cases, in addition to new scheduling issues (Case 200, Doc. 46).  On May 9, 2011, Judge Murphy granted the motion for reconsideration and consolidated the two cases for trial (Case 200, Doc. 50).

On August 18, 2011, following a four-day jury trial, Petitioner was found guilty on Counts 1-4 of the Drug Case, not guilty on Count 5 of the Drug Case (the fourth drug distribution count), and guilty on Counts 1-4 of the Ransom Case (Doc. 11-11; Doc. 11-12).  Sentencing for both cases was held on January 30, 2012, before Judge Murphy (Case 200, Doc. 102).  Judge Murphy sentenced Cureton to a total sentence of 744 months (Case 200, Doc. 102).  In the Drug Case, Cureton was sentenced to 120 months on Count 1 (felon in possession), and 360 months on Counts 2-4 (distribution of cocaine base, to run concurrently, for a total sentence in the Drug Case of 360 months (Case 200, Doc. 102).  In the Ransom Case, Cureton was sentenced to 240 months on Counts 1 and 3 (ransom and attempted extortion), to run concurrently (Case 200, Doc. 102), 84 months on the first § 924(c) conviction (Count 2) and 300 months on the second § 924(c) conviction (Count 4), with both § 924(c) sentences running consecutive to all other sentences, for a total sentence of 384 months in the Ransom Case (Case 200, Doc. 102).

The Government submitted the following table for illustration purposes, which summarizes Cureton's first sentence:

| Case | Count | Description | Sentence |
|------|-------|-------------|----------|
| 10-30160 | 1 | Felon in Possession | 120 months (concurrent) |
| 10-30160 | 2-4 | Distribution of Cocaine Base | **360** months (concurrent) |
| 10-30200 | 1 | Interstate Comm. of Ransom | 240 months (concurrent) |
| 10-30200 | 2 | Poss. of Firearm/Crime of Violence | **84** months (consecutive) |

3

| 10-30200 | 3 | Attempted Extortion | 240 months (concurrent) |
| 10-30200 | 4 | Poss. of Firearm/Crime of Violence | **300** months (consecutive) |
| | | | 360+84+300= **744 months** |

(Doc. 11, p. 11).

In explaining the severity of Cureton's sentence, Judge Murphy made the following comments concerning Cureton's capacity for violence and extreme depravity:

> The victim in this case is set on a bucket with her wrists and ankles tied by the defendant. She was beaten while she was seated, punched in the head and face, kneed in the ribs, kicked in the hip and, in addition, she was choked. This was done several times, He punched her off the bucket, kicked her in the side, leg and head. . . .
>
> I think Mr. Cureton is a dangerous man.  I think that he is dangerous not just for the reason -- and we heard what the evidence was and what he did to this young woman -- but he was wrong. You were -- you were after the wrong person, and that makes you doubly dangerous. You were—you were willing to take this young woman to an inch of her life on the theory she had stolen your dope. And the Court heard all the evidence, and I don't think she stole your dope. . . .
>
> But to tie a young woman up and kick, beat her, and threaten to cut her, and to bring other people in to frighten her, and then to call her family, just a horrible, horrible, horrible experience for everyone involved, is -- is cold and vicious beyond description. I would have given you a life sentence if the statute authorized it irrespective of what the guidelines provided for in this case.

(Case 200, Doc. 118, at pp 29-37).

Cureton appealed his sentence on January 31, 2012 (Case 200, Doc. 106).  Cureton challenged (1) the district court's admission of prior bad act evidence pursuant to Fed. R. Evid. 404(b), (2) the propriety of his two convictions under § 924(c), and (3) whether the district court's finding of brandishing at sentencing violated the precedent of *Alleyne v. United States*, 570 U.S. 99 (2013).  *See United States v. Cureton*, 739 F.3d 1032, 1034–35 (7th Cir. 2014).  The Seventh Circuit found no error in admitting 404(b) evidence at trial and

held that the district court's brandishing finding was erroneous but did not violate *Alleyne* or result in a miscarriage of justice. *Id.* However, the Seventh Circuit ruled that the two § 924(c) charges against Cureton for a single course of conduct involving only one use of one firearm were multiplicitous. *Id.* at 1043–44. Thus, the Seventh Circuit vacated Cureton's sentence and remanded his case for resentencing. *Id.*

On July 16, 2014, Cureton appeared for his first resentencing before Judge Herndon (Case 200, Doc. 160). At sentencing, Cureton raised an objection that the Drug Case and Random Case were improperly consolidated for sentencing (Case 200, Doc. 172, p. 15). Judge Herndon overruled Cureton's objection, finding that the two cases were "rationally related" such that there was "no reason not to have them together", and even if the sentencings were not consolidated, the sentencing court would consider all Cureton's conduct in forming a sentence (Case 200, Doc. 172, p. 17). Judge Herndon then sentenced Cureton to a total sentence of 444 months, eliminating the 300-month sentence on the second § 924(c) charge (Case 200, Doc. 160). Cureton's sentence otherwise remained the same as originally imposed.

The Government again submitted a table for illustration purposes, which summaries Cureton's second sentence:

| Case | Count | Description | Sentence |
|---|---|---|---|
| 10-30160 | 1 | Felon in Possession | 120 months (concurrent) |
| 10-30160 | 2-4 | Distribution of Cocaine Base | **360** months (concurrent) |
| 10-30200 | 1 | Interstate Comm. of Ransom | 240 months (concurrent) |
| 10-30200 | 2 | Poss. of Firearm/Crime of Violence | **84** months (consecutive) |
| 10-30200 | 3 | Attempted Extortion | 240 months (concurrent) |
| ~~10-30200~~ | 4 | ~~Poss. of Firearm/Crime of Violence~~ | ~~300 months (consecutive)~~ |
| | | | 360+84= **444 months** |

5

(Doc. 11, p. 13). At sentencing, Judge Herndon also commented on Cureton's dangerousness, finding he was "very dangerous" to the community (Case 200, Doc. 172, p. 37).

On July 17, 2014, Cureton appealed his sentence (Case 200, Doc. 164). He argued that the district court set conditions of supervised release without complying with *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015). *See United States v. Cureton*, Nos. 14-2576 & 14-2586 (7th Cir. June 30, 2015). The Seventh Circuit agreed and vacated Cureton's sentence and remanded for resentencing. *Id.*

On October 1, 2015, while the case was on remand before the district court, Cureton filed a motion to vacate his conviction for lack of jurisdiction (Case 200, Doc. 190). Cureton argued that Count 1 of the superseding incitement in the Ransom Case (interstate communication of ransom) failed to allege a necessary element under 18 U.S.C. § 875(a) because there was "no reference to scienter or any mental state" to form "an intent to extort." (Case 200, Doc. 190). Cureton relied on the case *United States v. Heller*, 579 F.2d 990 (6th Cir. 1978) (Case 200, Doc. 190). Judge Herndon denied Cureton's motion to vacate on October 14, 2015, finding:

> [T]he language in Count 1 of the superseding indictment tracks the statutory language (which does not contain specific mens rea) and sets forth the elements necessary, thus, the language contained in Count 1 is sufficient and not defective. Moreover, the Court declines to apply the reasoning in *Heller* to the facts of this case.

*United States v. Cureton*, No. 10-CR-30200-DRH, 2015 WL 5970673, at *1 (S.D. Ill. Oct. 14, 2015). On November 13, 2014, Judge Herndon resentenced Cureton to the same 444-

6

monht sentence and followed the Seventh Circuit's guidance for imposing conditions for supervised release (Case 200, Doc. 198).

On November 16, 2015, Cureton filed his third appeal (Case 200, Doc. 203), claiming for the first time that § 875(a) does not qualify as a "crime of violence" under § 924(c) (Doc. 11-16). To explain his delay in raising this issue, Petitioner stated that he did not know this argument existed before *Johnson*, which was decided on June 26, 2015 (Doc. 11-16, p. 16). The Seventh Circuit rejected this argument, finding that "a demand or request for ransom necessarily includes at least an implied threat that the kidnapper will use force against the captive if the demand is not satisfied", such that, at minimum, it was debatable whether the statute has an element of threatened use of physical force against another so to affirm the district court's sentence under a plan-error review. *United States v. Cureton*, 845 F.3d 323, 326 (7th Cir. 2017), *cert. granted, judgment vacated,* 199 L. Ed. 2d 1 (Oct. 2, 2017).

Cureton then filed a petition for certiorari to the Supreme Court. On October 2, 2017, the Supreme Court granted certiorari, vacated, and remanded Cureton's case back to the Seventh Circuit for reconsideration in light of *Dean v. United States*, 581 U.S. 62 (2017) (disapproving of prior precedents barring sentencing judges from considering the mandatory minimum sentence under § 924(c) when deciding the sentences for other crimes). *See Cureton v. United States*, 199 L. Ed. 2d 1 (Oct. 2, 2017). The Seventh Circuit ordered a limited *Paladino* remand so the district court could "determine whether it would have imposed the same sentence, knowing that in light of *Dean*, it may consider the mandatory sentence under § 924(c) when deciding the sentences for other crimes" or

7

whether the court wished "to have a new opportunity to exercise its discretion and judgment in a complete resentencing." *United States v. Cureton*, 882 F.3d 714, 716 (7th Cir. 2018).

On March 21, 2018, Judge Herndon issued an order explaining that he saw no basis to change Cureton's sentence (Case 200, Doc. 233). Judge Herndon quoted his own prior comments at resentencing, in addition to Judge Murphy's comments at Cureton's original sentencing, recalling that the Court's earlier determinations "that Cureton's capacity for violence and depravity was extreme and Cureton needed to be off the streets for as long as the law would permit which the Court determined to be 444 months imprisonment." (Case 200, Doc. 233, pp. 2-4). Judge Herndon concluded that a lower sentence would not be sufficient to serve the purposes of 18 U.S.C. § 3553(a) and would constitute a "travesty of justice." (Case 200, Doc. 233, pp. 3-4). The Seventh Circuit reviewed and affirmed Cureton's 444-month sentence on April 10, 2018. *See Cureton*, 887 F.3d at 319. Following the Supreme Court's denial of Cureton's petition for certiorari, this Motion followed.

## The Motion

On October 10, 2019, Petitioner filed his § 2255 Motion (Doc. 1). His original motion raises eight claims for ineffective assistance of his trial counsel, and a claim under *Rehaif v. United States*, 204 L. Ed. 2d 594 (June 21, 2019), summarized as:

1. Whether counsel was ineffective for consolidating the trials,

2. Whether counsel was ineffective for arguing that Cureton was just a middleman in the drug transactions,

3. Whether counsel was ineffective for presenting inculpatory evidence (the fact he had a prior *drug* conviction) at trial,

4.  Whether his conviction for being a felon in possession remains valid under *Rehaif v. United States*, 202 L. Ed. 2d 641 (Jan. 11, 2019),

5.  Whether counsel was ineffective for failing to file a motion to dismiss Count 1 of the Ransom Case for failing to allege an essential element,

6.  Whether counsel was ineffective for failing to cross examine the victim in the Ransom Case, and allegedly conceding Cureton's guilt in closing argument,

7.  Whether counsel was ineffective for not objecting to the use of his prior Illinois drug conviction to enhance his sentence in the Drug Case under 21 U.S.C. § 841(b),

8.  Whether counsel was ineffective for not preserving an argument that his § 875(a) convictions were predicate offenses under 18 U.S.C. § 924(c), and

9.  Whether counsel was ineffective for consolidating the two cases for sentencing.

(Doc. 1).  After briefing was completed on these issues, Cureton sought leave to file an amended motion (Doc. 25).  The Court granted the Motion for Leave, over the Government's objection (Doc. 36), and directed the Government to respond as appropriate to Petitioner's additional filings (Doc. 36).  Petitioner's Amended Motion (Doc. 37) purports to raise, or bolster, two additional grounds for relief, which the Court will consider with the above claims.  These additional claims include:

1.  Whether his trial counsel was ineffective for failing to make a *Rehaif*-type argument to preserve the claim for appeal, and

2.  Whether his § 924(c) conviction remains valid under *United States v. Davis*, 204 L. Ed. 2d 757 (June 24, 2019).

(Doc. 37).

## Legal Standard

Section 2255 permits prisoners to petition their sentencing court for relief from their sentence if the sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under section 2255 is "reserved for extraordinary situations" and cannot substitute for direct appeals. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Therefore, issues not raised on direct appeal are barred from collateral review absent either a showing of good cause for the failure resulting in actual prejudice, or that a refusal to consider the issue would lead to a "fundamental miscarriage of justice." *Id.* Cureton ultimately bears the burden to prove the allegations in his petition warrant relief under section 2255. *Stetson v. United States*, 417 F.2d 1250, 1253 (7th Cir. 1969).

The district court is not required to hold an evidentiary hearing on a 28 U.S.C. § 2255 motion if "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Cooper v. United States*, 378 F.3d 638, 641–642 (7th Cir. 2004); *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("There is no requirement that the district court grant an evidentiary hearing for every § 2255 petition alleging factual improprieties."); *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989) ("the district court is entitled to consider all the circumstances in the record in determining whether a hearing should be afforded on a 28 U.S.C. § 2255 petition. Mere unsupported allegations cannot sustain a petitioner's request for a hearing") (internal

citations and markings omitted). Based on a review of the filings and the extensive record, this Court concludes that the issues in this case can be resolved on the existing record; an evidentiary hearing is not necessary.

## Discussion

Ineffective assistance of counsel claims may be brought in a collateral proceeding under section 2255 regardless of whether the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on his ineffective assistance claims, Cureton must ultimately show that "his counsel was deficient, and that this deficiency prejudiced him." *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 669 (1984)). "A failure to establish either deficience or prejudice is fatal to [petitioner's] claim." *Gant*, 627 F.3d at 682; *see Thill v. Richardson*, 996 F.3d 469, 477–78 (7th Cir. 2021) (Petitioner must establish both *Strickland* prongs).

For the first prong, Cureton must demonstrate that his counsel's representation fell below the objective standard of reasonableness. *Strickland*, 466 U.S. at 669. Here, Cureton must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669; *Cooper*, 378 F.3d at 641 ("Defense counsel is 'strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment.").

For the second prong, defendant must show that counsel's "deficient performance prejudiced the defense", meaning that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.")
*Taylor v. Bradley*, 448 F.3d 942, 950 (7th Cir. 2006) (internal citations omitted); *Thill*, 996
F.3d at 476 (quoting *Strickland*, 466 U.S. at 694).  Here, Cureton must demonstrate that his
counsel's conduct "so undermined the proper functioning of the adversarial process that
the trial cannot be relied on as having produced a just result." *Cooper*, 378 F.3d at 642
(citing *Strickland*, 466 U.S. at 686).  In other words, Cureton must show that without
counsel's alleged defective assistance, the outcome of his case would have been different.
But a "mere possibility of prejudice does not qualify as *actual* prejudice." *Prewitt*, 83 F.3d
at 819 (emphasis in original); *see also Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The
likelihood of a different result must be substantial, not just conceivable").

Cureton raises a multitude of grievances against Stobbs' performance (Doc. 1, Doc.
37).  With its response, the Government provided an Affidavit from Attorney Stobbs
(Doc. 11-5), in addition to an Affidavit from Attorney Thomas Q. Keefe, III, who also
represented Cureton at trial (Doc. 11-6).   The Government, Stobbs, and Keefe argue that
Stobbs' performance was not deficient, and that he properly exercised his trial strategy,
even effectively resulting in Cureton's non-guilty verdict on one of the drug counts.

However, before evaluating whether Stobbs' performance was "professionally
competent," the Court first looks to whether Cureton can establish prejudice.  *Taylor*, 448
F.3d at 949 (relying on *Strickland*, 466 U.S. at 694) (the Seventh Circuit consistently adopts
the Supreme Court's mandate in *Strickland* of "first examining whether the petitioner has
established prejudice and then, if necessary, examining whether counsel's performance
fell outside the parameters of what could objectively be considered 'professionally

competent.'").  Indeed, "when an ineffectiveness claim may be disposed of on the basis

of a lack of prejudice" then "it is unnecessary and undesirable for [the court] to consider

the attorney performance facet of the analysis." *Id.*  This approach prevents courts from

conducting an "undesirable . . . 'second trial, this one of counsel's unsuccessful defense'

when the case can be resolved on lack of prejudice grounds.'") *Id.* at 949–950 (quoting

*Strickland*, 466 U.S. at 697).  Ineffective assistance claims do not prejudice defendants

where "overwhelming evidence" of defendant's guilt is presented at trial.  *See Taylor,* 448

F.3d at 950 (collecting cases).

## I.  **Cureton's Search for Prejudice Under *Strickland***

Here, a review of the record reveals that Cureton cannot establish prejudice and

his ineffectiveness claims necessarily fail.  The evidence presented by the Government of

Cureton's guilt was overwhelming so to support the reliability of his guilty verdict, and

thus Cureton cannot demonstrate that but for Stobbs' conduct "there was a reasonable

probability that the result of the proceeding would have been different." *Taylor,* 448 F.3d

at 951 (internal markings omitted).  The Government presented its case over 4 days and

called 25 witnesses (Case 200, Doc. 97). The evidence presented by the Government

included testimony from the kidnapped victim, her family members, a confidential

informant, the robbery victim, the resident of the apartment where controlled buys

occurred, video surveillance of Cureton leaving his home to meet the confidential

informant, recorded phone calls, along with government agents linking Cureton's

fingerprints to an electronic scale, a bag containing pistols, and to controlled "buy

money" found in Cureton's wallet. *See Cureton*, 739 F.3d at 1039.

As documented in the trial record, and further summarized in *Cureton*, 739 F.3d at 1039, at trial the Government presented evidence that on December 31, 2009, January 4, 2010, and January 7, 2010, Cureton sold crack cocaine to a confidential informant. *Id. at 1035*. On December 31, 2009, a police inspector watched as a confidential informant called Cureton to set up a drug buy. The inspector searched the informant, gave him $60 in recorded bills, watched as the informant and Cureton entered the same building, and then received crack cocaine from the informant that the informant said Cureton sold him while another officer recorded Cureton as he left his home and drove to meet the informant. *Id.*

The confidential informant made two more crack cocaine buys on January 4, 2010, in similar fashion. This sale took place at the apartment of William Bosely, who also testified that he watched the drug transaction take place. *Id.* The Government also alleged that the confidential information bought crack cocaine from Cureton on January 7, but the jury acquitted Cureton on this charge. *Id.* On January 7, 2010, law enforcement agents executed a warrant search of Cureton's home and found marked bills from the confidential information inside Cureton's wallet linking Cureton to the first buy on December 31, 2009. *Id.* Agents also searched Bosely's apartment, where the January 4, 2010 buys occurred, and recovered two pistols, ammunition, and an electronic scale with Cureton's fingerprints on them. *Id.*

As for the Ransom Case, the Government presented evidence that on June 12, 2010, a man named Eddie Sakosko had approximately $9,800 in cash on him from the recent sale of his home. *Id.* Sakosko and his friends decided to use some of the money to buy

crack cocaine from Cureton, who delivered drugs to the group. *Id.* at 1036. Cureton delivered drugs to the group a second time and pulled out a gun and demanded money from Sakosko. *Id.* The gun discharged with no injuries, and Cureton left with $9,500 in cash. *Id.* Sakosko and his associates called the police and reported the robbery. *Id.*

Two days later, on June 14, 2010, Cureton, and his wife, LaQuita, left the apartment they shared with LaQuita's brother, Demetrius Anderson, and Anderson's eighteen-year-old girlfriend, Ashley Lawrence. *Id.* at 1036. The police arrived looking for Cureton. *Id.* Anderson spoke with LaQuita on the phone after the police left, and LaQuita relayed that she and Cureton wanted cash and LaQuita's puppy brought to them. *Id.* It was decided that Lawrence should bring the money to them because she would be less suspicious than Anderson. Anderson directed Lawrence to bring $9,000 in cash that was hidden in the freezer, along with LaQuita's puppy, to Cureton and LaQuita at a nearby park. *Id.*

Lawrence testified at trial that she put the money in a newspaper, which she then put inside a plastic bag, and carried both the package and LaQuita's puppy toward the park. Lawrence said she dropped the newspaper several times as she attempted to also hold the dog, and at some point, realized the money was missing. When she realized the money was gone, she called LaQuita right away and told her what happened. As Lawrence was retracing her steps looking for the cash, Cureton arrived in a friend's car and demanded to know where the money was, saying that he "shot a motehrf'er in the head for the money." Cureton ordered Lawrence in the car and took her to a friend's house. Inside the basement, Cureton screamed at Lawrence, punched her, threatened her, and questioned her about where the money was.

Cureton eventually assented to Lawrence's request for a chance to find the money, but the search was unsuccessful.  After Lawrence returned to the house, Cureton took her behind a garage and punched her repeatedly, tied her to a bucket, broke her nose, kicked her, choked her, and threatened to cut certain body parts with a knife.  Cureton also made a phone call and instructed the person on the receiving end to bring him "that thing."  Cureton's brother arrived about 10 minutes later and handed Cureton a gun.  Cureton put the gun to Lawrence's head and told her it was her last chance.  Cureton, Lawrence, and LaQuita then got into the Curetons' parked car, and, under pressure from Cureton, Lawrence began making calls to family members to request money.  Lawrence called her mother, stepfather, and grandfather, who all had doubts about Lawrence's request because of her history of lying.  Cureton spoke to Lawrence's grandfather, after which he agreed to make a wire transfer of about $4,500.  Cureton, Lawrence, and LaQuita then headed back to their apartment.  Lawrence's family members contacted police officers, who were present at the apartment and Cureton was arrested.  *Id.* at 1037.

Lawrence's testimony was corroborated by other witnesses, photographs, and physical evidence, including her blood-stained shirt and the buckets found behind the shed (Case 200, Doc. 97).  The Seventh Circuit described the evidence of the kidnapping and ransom as "overwhelming" *Id.* at 1039.  Further, at all sentencings, Judge Murphy and Judge Herndon commented on the violent circumstances of the crimes.  Judge Murphy stated:

> [T]o tie up a young woman and kick, beat her, and threaten to cut her, and
> to bring other people in to frighten her, and then to call her family, just a
> horrible, horrible, horrible experience for everyone involved is—is cold and

vicious almost beyond description. I would have given you a life sentence
if the statute authorized it irrespective of what the guidelines provided for
in this case.

(Case 200, Doc. 118, at p. 37; Doc. 11-13).

At resentencing, Judge Herndon also commented on the severity of the torture
associated with Cureton's actions, highlighting how Cureton held the victim against her
will, held a knife against certain body parts, and held a gun against her head (Case 200,
Doc. 214, p. 23).  In addition, Judge Herndon commented on the severity of Cureton's
distribution of cocaine, highlighting that the buys occurred near a school (*Id.*).

After reviewing the record, the evidence presented against Cureton at trial was
overwhelming and supports the reliability of the jury's guilty verdict, even assuming
Stobbs' alleged performance was deficient.  Therefore, Cureton cannot show that "there
was a reasonable probability that the result of the proceeding would have been different"
had Stobbs performed differently.  Because Cureton cannot demonstrate prejudice, his
ineffective assistance claims must fail without further analysis into Stobbs' performance.
*See Taylor*, 448 F.3d at 949.

## II.  Cureton's Search for Deficiency in Counsel's Performance.

The Court finds no indication in the record that Stobbs' performance fell below the
objective standard of reasonableness.   Cureton's complaints concerning Stobbs'
performance fall generally into three categories: (1) the decision to consolidate the trials;
(2) decisions made at trial; and (3) failing to preserve certain legal arguments. However,
none of these alleged errors establish deficient performance so to implicate Petitioner's
Sixth Amendment right.  *See Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006) (To

17

establish deficient performance, defendant must show errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment).   In reviewing Stobbs' decisions, the Court must presume that counsel made reasonable strategic choices unless the petitioner produces evidence rebutting that presumption.  *Cooper*, 378 F.3d at 641 (Counsel is "strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment.").  This is a "highly deferential" standard and Cureton offers very little to rebut the presumption.  *Id.*

### A.     Consolidation

In his Affidavit, Stobbs stated that he was initially prepared to go to trial on both of Cureton's cases, with the first set for trial before Judge Murphy on April 26, 2011, and the second set for trial on May 2, 2011, before Judge Stiehl (Doc. 11-5, ¶ 30).  However, Stobbs stated that after the superseding indictment was returned in the Ransom Case, adding the two § 924(c) counts, Stobbs became "very concerned that Mr. Cureton would be convicted and that for 404(b) purposes the Government could use the conviction on May 2, 2011 with Judge Stiehl." (Doc. 11-4, ¶ 31).  Stobbs further stated that he was concerned by the Government's 404(b) Notice because of the "incredible overlap of guns and witnesses in both cases."  (*Id.*)  Stobbs indicated that without the superseding indictment, he would have moved to keep the Government from discussing anything regarding the firearms or Cureton's prior bad acts, but with the inclusion of the firearm counts, the Government would have been allowed to discuss the firearms in the case (*Id.*)

Stobbs also indicated that he believed the Government's evidence continued to get stronger, and he speculated that the Government "wanted two bites of the apple with Mr. Cureton, [such that i]f it lost some counts in the Judge Murphy trial, it had another shot at Mr. Cureton in the Judge Stiehl trial and vice-versa" (Doc. 11-5, ¶¶ 32-34). Stobbs also believed that the two trials would have allowed the Government to know Cureton's trial strategy and witnesses would have been better prepared for a second trial (Doc. 11-5, ¶ 34). Finally, Stobbs maintains that if he had not sought consolidation of the two cases, Cureton would have had a good argument for ineffective assistance of counsel for the failure to do so (Doc. 11-5, ¶ 36).

Cureton's counsel on appeal and at resentencing opined that one of Stobbs' stated purpose for consolidation – specifically his concern with the potential of being classified as a career offender and subject to §4B1.1 enchantments – may not have been a true concern because Cureton's initial presentence investigation report revealed the adjusted offense level of the extortion/ransom charges as higher than the offense level for a career criminal classification (Doc. 24-1, p. 3). However, this Court does not believe Stobb's strategy in any way amounts to deficiency in his representation of Cureton, particularly in consideration of all the grounds Stobbs raised for seeking consolidation, both in his Affidavit (Doc. 11-5) and in the Motion filed with the Court (Case 106, Docs. 88, 98). Rarely, if ever, is pre-trial strategy illuminated with the same light as hindsight. Before trial, variabilities in evidence, method of evidence presentation, and a jury's consideration of the evidence are virtually boundless. Pre-trial analysis of these variabilities in a meaningful way requires counsel to conduct a calculated risk assessment

that is often intricate and daunting. Here, there is nothing in the record to suggest that Stobbs' risk assessment or implementation of his strategy was lacking, let alone that his representation of Cureton was deficient.

"There are countless ways to provide effective assistance in any given cases [and e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 690. Moreover, and as detailed above, there is no reasonable probability that if Cureton's cases went to trial separately that the result would have been any different. Indeed, at his first resentencing, Judge Herndon found that the two cases were "rationally related" such that there was "no reason not to have them together", and even if the sentencings were not consolidated, the sentencing court would still have consider all the defendant's conduct (Case 200, Doc. 172, p. 17).

**B.     Trial Decisions**

Nor do Sobbs' trial decisions amount to deficiencies. Cureton complains generally of the following trial decisions: (a) Stobbs' arguments made suggesting that Cureton was a middleman in the drug transactions, (b) Stobbs' presentation of inculpatory evidence that Cureton had a prior drug conviction, (c) the decision to not cross-examine the victim, Lawrence, and (d) Stobbs' comments allegedly conceding Cureton's guilt in closing arguments. These arguments are easily rejected.

First, the evidence at trial revealed that Cureton directly sold drugs to a confidential informant regardless of Stobbs' attempt to downplay his role as a "middleman." Cureton was charged with "knowingly and intentionally distributing" cocaine (Case 106, Doc. 42). However, at trial, Stobbs attempted to argue that Cureton

20

did not "knowingly and intentionally" distribute drugs to others, but instead was a middleman merely putting other dealers in touch with individuals (Case 200, Doc. 114, p. 38). This decision falls within the considerable deference afforded counsel to provide a wide range of reasonable assistance. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight … and the defendant must overcome the [strong] presumption that, under the circumstances, the challenged action 'might be considered strong trial strategy.'").

Nevertheless, even without Stobbs' argument, the evidence at trial revealed that Cureton was a direct dealer. The Seventh Circuit summarized this evidence, finding:

> The three controlled buys that led to convictions were all supported by the testimony of a confidential informant who testified at trial. In addition, the jury heard that law enforcement officials were present while the informant and Cureton made phone calls to set up the deals and that they watched as Cureton left his home and went to the agreed upon meeting place during each of the deals. Another witness, William Bosley, testified that he watched the second deal between Cureton and the confidential informant in Bosley's apartment, and Cureton's fingerprints were found on an electronic scale and a bag containing pistols that Bosley said Cureton had hidden in Bosley's ceiling tiles. Notably too, some of the "buy money" provided to the informant for the sole purpose of buying drugs during the first sale was found in Cureton's wallet seven days later.

*Cureton*, 739 F.3d at 1039. Thus, there is no reasonable probability that the jury would have reached a different result if counsel would have referred to Cureton as something other than a middleman.

Next, Cureton argues that Stobbs' decision to admit an exhibit containing inculpatory information regarding his prior drug conviction was erroneous. The Court

disagrees.  Stobbs' defense strategy involved attacking the Government's investigation (Doc. 11-5, ¶ 40).  Indeed, during opening statements, counsel repeatedly told jurors that law enforcement failed to do their "due diligence" because they relied on bad information from a biased informant (Case 200, Doc. 114, p. 40).  To support this strategy, Stobbs admitted a search warrant application on the cross-examination to "show the jury that law enforcement applied for a search warrant alleging they were going to find numerous illegal items, but found nothing." (Doc. 11-5, ¶ 40).  However, in doing so, the search warrant also revealed that Cureton had a prior conviction for a drug related offense and multiple drug-related arrests that did not result in convictions (Case 200, Doc. 96, pp. 111-112).  Nevertheless, Stobbs rightly believed that any prejudice from this evidence would be limited because Cureton previously signed a stipulation confirming that he had been convicted of a prior felony as part of his felon-in-possession charge (Case. 106, Doc. 122).  Moreover, while Stobbs' argument attacking the credibility of the police investigation did not result in a complete acquittal, the jury did return a not guilty verdict on one of the four distribution counts, suggesting that Stobbs was at least, to an extent, successful in undermining the investigation and the informant's credibility (Case 106, Doc. 133, p. 5).

Counsel was also not deficient in his decision to not cross examine the victim. Throughout the record, Lawrence's testimony was consistently described as compelling. Her testimony was further corroborated by other witnesses, photographs, and physical evidence, including her blood-stained shirt and the buckets found behind the shed (Case 200, Doc. 97).  The Seventh Circuit described the evidence of the kidnapping and ransom

as "overwhelming," *Cureton*, 739 F.3d at 1039, and according to Stobbs, the testimony was so powerful that he still remembers it vividly nearly a decade later (Doc. 11-5, ¶ 41).

Stobbs also represented that after Lawrence's direct examination ended, Judge Murphy took an unscheduled break which Stobbs believed was done because of the powerful emotion shown during her testimony (Doc. 11-4, ¶ 42). During this break, Stobbs stated that he discussed his strategy with Attorney Keefe, and they both questioned how to cross-examine Lawrence without infuriating the jury (Doc. 11-5, ¶ 43). Given this risk, Stobbs stated he decided to not cross-examine the victim, and instead cross-examined other witnesses to attack her credibility (Doc. 11-5, ¶¶ 44-45). Indeed, Stobbs' examination of other witnesses, including Lawrence's family members, effectively revealed that Lawrence had a history of lying (Case 200, Doc. 97, at pp. 416-417), thus accomplishing a credibility challenge without cross-examining her directly. This decision was well within Stobbs' discretion, and the Court observes no reason to, in hindsight, second-guess that decision. *See, e.g., Bryant v. Brown*, 873 F.3d 988, 996 (7th Cir. 2017) ("A decision not to impeach a particular witness is normally considered a strategic choice within the discretion of counsel" especially "when it is far from clear that any impeachment would have been successful.") (citing *Jones v. Butler*, 778 F.3d 575, 584 (7th Cir. 2015)).

Finally, Cureton complains that Stobbs conceded his guilt during cross examination, when Stobbs stated that Lawrence's testimony was "heart-wrenching" and "awful" and indicated that the jury could take the easy way out and find Cureton "guilty of everything" because of her sympathetic story (Doc. 1, pp. 15, 52). However, as the

Government points out, Cureton failed to include the rest of Stobbs' argument where he reminded the jury of their oath, told them to test the evidence and be skeptical of the evidence, and argued that even if Lawrence's testimony was true, it could only amount to state crimes:

> You can say, well, if he committed this, he must be guilty of everything else. If you do, you shorted your oath. If you do, you haven't kept your promise. Test it. Scrutinize it. Study it. Hold them to their burden. Be skeptical. Be skeptical and ask yourself, ask yourself about what happened in June, number one, but ask yourself, more importantly, what is it about what happened in June that's really being charged here?
>
> . . .
>
> Those are state crimes. Those don't implicate federal jurisdiction. Mr. Burke told you about federal jurisdiction. Federal jurisdiction means interstate commerce. Federal jurisdiction means things crossing state lines. That means as angry as Ashley Lawrence's testimony makes you, it might make you even angrier to know that her testimony, she never testified to a federal crime. That is not what was charged. The victim: When the instruction says "the victim," and they talk about fear of the victim. That fear is not Ashley Lawrence's. That fear would be Gary Neumann, Gary Ramage, Misty Neumann. The "victims" on these counts are the people on the other end of the phone. That's what it is that you are being asked to decide. It's different than what Ashley testified to . . . .

(Case 200, Doc. 115, pp. 62-63). This additional context is necessary for understanding Stobbs' argument, and the Court finds that these statements fall within the "wide range of competent representation" afforded counsel.  *See, e.g.*, *Bryant*, 873 F.3d at 997 (Even "[e]rrors resulting from strategic miscalculations may fall within the wide range of competent representation").

## C.    Failing to Preserve Legal Arguments

Cureton's last set of arguments pertain to the alleged failure to preserve certain legal arguments, including arguments under *Rehaif*, 202 L. Ed. 2d 641, Fed. R. Crim. P. 7,

*Mathis v. United States,* 579 U.S. 500 (2016), *Johnson v. United States,* 576 U.S. 591 (2015), and *Davis,* 204 L. Ed. 2d 757. However, as further detailed below, none of these legal arguments raise sufficient grounds to alter Cureton's conviction or sentence. Thus, even to the extent his trial counsel could have raised or preserved these arguments at trial, such failure does not amount to ineffective assistance of counsel. *See, e.g., United States v. Rezin,* 322 F.3d 443, 446 (7th Cir. 2003) (counsel has no duty to make frivolous arguments, and tactical reasons to not raise weak arguments that may district he court from stronger claims); *in accord United States v. Brodie,* 507 F.3d 527, 532 (7th Cir. 2007); *see also Kirklin v. United States,* 883 F.3d 993, 997 (7th Cir. 2018) ("We have said repeatedly that the guarantee of effective assistance of counsel does not require an attorney to anticipate every eventual change in the law.").

1.   *Rehaif* **claim**

Cureton argues that he is entitled to relief premised on *Rehaif,* 202 L. Ed. 2d 641, because the Government did not allege or prove that he knew he was a prohibited person (i.e. a person with a prior felon) at the time he possessed the firearm in this case. In *Rehaif,* the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif,* 204 L. Ed. 2d 594; *United States v. Williams,* 946 F.3d 968, 970 (7th Cir. 2020). Post-*Rehaif,* the Government does not have "to prove that the defendant knew he was prohibited from possessing a firearm. Knowledge of the relevant status is enough." *Santiago v. Streeval,* 36 F.4th 700, 707 (7th Cir. 2022) (citing *United States v. Maez,* 960 F.3d

25

949 (7th Cir. 2020)); *United States v. Cook*, 970 F.3d 866, 880 (7th Cir. 2020).  In examining whether the defendant knew of his relevant status, the Seventh Circuit has instructed that district courts can, and should, consider other evidence in the criminal record to determine whether the evidence establishes the knowledge element set forth in *Rehaif*. *See, e.g.*, *Williams*, 946 F.3d at 973; *United States v. Dowthard*, 948 F.3d 814, 818 (7th Cir. 2020); *United States v. Pulliam*, 973 F.3d 775 (7th Cir. 2020).

The Government acknowledges that the jury was not instructed to find that Cureton *knew* he was a felon at the time he possessed the firearm at issue (Doc. 11, p. 36).  This was consistent with pre-*Rehaif* controlling precedent.  However, the Government avers that it would have been implausible for Cureton to not know he was a prohibited person because of his prior felony convictions, and the terms of imprisonment he served for those convictions.  *See, e.g.*, *Williams*, 946 F.3d 968 (Finding that defendant "cannot plausibly argue that he did not know his conviction had a maximum punishment exceeding a year" where he spent twelve years of his life in prison); *Santiago*, 36 F.4th at 708-09 (collecting cases).  The Court agrees.  Cureton stipulated at trial that prior to January 7, 2010, the date he was alleged to have possessed the firearm at issue, he had been convicted of a felony offense (Case. 106, Doc. 122).  Further, his criminal history reveals that Cureton served more than a year in custody on at least 3 occasions for prior offenses (Case 200, Doc. 196, ¶¶ 101-105) (sealed).  Considering he served more than one year in prison and stipulated to his prior felony, Cureton's arguments that he did not know of his status as a felon would be implausible, and he is not entitled to relief on this basis. *See Maez*, 960 F.3d 949 (even assuming *Rehaif* violations, these errors would not

undermine the fairness or integrity of a judicial proceeding when there was no doubt the defendant knew he was a felon and juries would be permitted to hear such evidence).

### 2. Insufficient Indictment

Next, Cureton reasserts an argument presented at his resentencing on October 1, 2015, where he sought to have his conviction vacated for a lack of jurisdiction (Case 200, Doc. 190). Specifically, he argued that Count 1 of his Ransom Case, under 18 U.S.C. § 875(a), failed to allege a necessary element because there was "no reference to scienter or any mental state" such as "an intent to extort." (Case 200, Doc. 190) (citing *Heller*, 579 F.2d 990). Judge Herndon rejected this argument, finding that "the language in Count 1 of the superseding indictment tracks the statutory language (which does not contain specific mens rea) and sets forth the elements necessary" such that the language "is sufficient and not defective." *Cureton*, 2015 WL 5970673, at *1. The Court finds no basis to reconsider this prior ruling. Moreover, a defect in an indictment does not deprive the Court of jurisdiction. *See United States v. Cotton*, 535 U.S. 625 (2002) ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case."). The Court is also not aware of any binding precedent determining that an intent to extort is an essential element of § 875(a). Thus, even if this omission was erroneous, the argument would not result in prejudice.

### 3. *Johnson* and *Davis* based claims

Cureton raises multiple legal challenges to his § 924(c) conviction, for which he was sentenced to 84 months. These claims are based on guidance from *Johnson*, 576 U.S. 591, *Davis*, 204 L. Ed. 2d 757, and their progeny. Cureton also raised these claims on

27

appeal, and the Seventh Circuit rejected his arguments on a plain error review finding that Cureton could show no harm because his guidelines range would have remained the same regardless of whether his § 924(c) conviction was vacated.  *See Cureton*, 845 F.3d at 328.  It is for this reason that Cureton's remaining legal challenges to his § 924(c) conviction must also fail, even ignoring that Cureton has shown no changed circumstances that would permit him to relitigate those issues raised on appeal.  *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) ("Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances.").

Cureton challenges his § 924(c) conviction arguing that his § 875(a) conviction was not an appropriate predicate offense for his conviction following *Johnson*, 576 U.S. 591 (holding that the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) is unconstitutional).  He further argues that his claim should be vacated following *Davis*, 204 L. Ed. 2d 757, where the Supreme Court held the definition of "crime of violence" contained in the "residual clause" of 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague.  The Seventh Circuit rejected Cureton's *Johnson*-based argument on appeal, finding that his sentence would remain unchanged regardless of whether his § 924(c) conviction was vacated:

> [E]ven if we vacated the § 924(c) sentence, the guideline range of 360 to 720 months for his remaining offenses in his two consolidated cases would remain the same. In addition, there is no doubt that Cureton as a matter of fact threatened his victim with force with a gun literally to her head. The district court is perfectly entitled to consider that fact in exercising its sentencing discretion. *See* 18 U.S.C. § 3661. With an unchanged guideline range, the district court could readily impose the same 444-month sentence that it has already ruled twice is appropriate. *Cureton,* 845 F.3d at 327. The high likelihood that Cureton would receive the same sentence, even if his *Johnson* claim was successful, is underscored by the district judge's comments at Cureton's first sentencing hearing:

[T]o tie up a young woman and kick, beat her, and threaten to cut her, and to bring other people in to frighten her, and then to call her family, just a horrible, horrible, horrible experience for everyone involved is—is cold and vicious almost beyond description. I would have given you a life sentence if the statute authorized it irrespective of what the guidelines provided for in this case.

*Cureton*, 739 F.3d at 1045.

As for his *Davis*-based claim, the Seventh Circuit originally rejected this claim for two reasons. *Cureton*, 845 F.3d at 325.   First, the Seventh Circuit reasoned that Cureton's ransom offense debatably satisfied the "elements" or "force" clause of § 924(c)(3)(A). *Id.* Second, the Seventh Circuit found that Cureton could not show harm because his guidelines range would remain the same regardless of whether his § 924(c) conviction was vacated. *Id.* at 328.   The Seventh Circuit later held that holding a person ransom "did not categorically" satisfy the elements clause of § 924(c)(3)(A), *see United States v. Jenkins*, 849 F.3d 390, 393 (7th Cir. 2017), *cert. granted, judgment vacated,* 201 L. Ed. 2d 240 (May 14, 2018), altering its reasoning on the first holding.   However, in doing so, the Seventh Circuit specifically addressed Cureton's case, emphasizing that Cureton's conviction would remain unaltered on its second holding because Cureton could not demonstrate harm from the error, whereas Jenkins' sentence was 120 months longer than his guidelines range without the enhancement.   *See Jenkins*, 849 F.3d at 393–94.

The Court can discern no reason to depart from the Seventh Circuit's analysis and reiterates that even if Cureton's § 924(c) sentence was vacated, there is no indication in the record that he would have received a different sentence as the guideline range on his remaining offenses continued to be 360 to 720 months.   As Judge Herndon aptly reasoned

in his March 2018 Order, "any sentence other than that previously imposed by this Court would be so insignificant as to be a travesty of justice." (Case 106, Doc. 268).

### 4. Mathis-based claims

Cureton argues that his 21 U.S.C. § 841(b) conviction was improperly enhanced following *Mathis*, 579 U.S. 500, *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018), and their progeny. In *Mathis,* the Supreme Court provided guidance on the "categorical approach for classifying prior convictions for purposes of recidivist sentencing enhancements." *See Watkins v. United States District Court for the Central District of Illinois*, 37 F.4th 453, 456 (7th Cir. 2022) (summarizing *Mathis*). Under the categorical approach, the court asks, "whether the elements of the crime of conviction match the elements of the crime referenced in the federal statute, while ignoring the particular facts of the case." *Elder*, 900 F.3d at 501 (internal citation and markings omitted). "If, and only if, the elements of the state law mirror or are narrower than the federal statute can the prior conviction qualify as a predicate felony drug offense." *United States v. De La Torre*, 940 F.3d 938, 948 (7th Cir. 2019).

Cureton argues that the use of his prior Illinois drug conviction under 720 Ill. Comp. Stat. Ann 570/401(c)(2) (Case 200, Doc. 196, ¶ 105) to enhance his sentence under 21 U.S.C. § 841(b) was error. The Seventh Circuit recently found, on direct appeal, that the Illinois definition of cocaine in 720 Ill. Comp. Stat. Ann. 570/401(c)(2) was categorically broader than the federal definition in 21 U.S.C. § 815, and rejected the use of an Illinois cocaine conviction as a predicate offense for enhancement under 841(b)(1)(C). *United States v. Ruth*, 966 F.3d 642, 647 (7th Cir. 2020). *Ruth* further instructs

that an enhancement error here will affect a defendant's substantial rights when the enhancement increased the defendant's Guidelines range.  *See Ruth*, 966 F.3d at 650 ("When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error.") (quoting *Molina-Martinez v. United States*, 578 U.S. 189 (2016)).

Here, Petitioner's sentence derives from 21 U.S.C. § 841, which at the time of his sentencing and resentencing, provided for a maximum statutory sentence of 720 months (Case 200, Doc. 196, ¶¶ 152-153) (Sealed). Probation computed this number by starting with 240 months (the baseline maximum under § 841(b)(1)(C)) and increasing that amount to 360 months because of Cureton's prior drug felony offense (the § 841 enhancement), and then doubling that amount because each of the three controlled buys took place near a school (the second enhancement under 21 U.S.C. § 860). Cureton does not challenge his § 860 enhancement. Without the § 841 enhancement, Cureton's maximum statutory penalty on each of his distribution counts would be 480 months, which accounts for the 240 months baseline maximum, then doubled to account for the § 860 enhancement.

The Government correctly notes that even if Cureton had successfully challenged his § 841 enhancement, his sentence of 360 months on each drug count was well within this statutory range.  However, this does not preclude a finding of error.  *Ruth*, 966 F.3d at 651 ("We have repeatedly held that '[a] sentencing based on an incorrect Guidelines range constitutes plain error and warrants a remand for resentencing, unless we have

reason to believe that the error in no way affected the district court's selection of a particular sentence.").  Under the particular circumstances of this case, the Court finds that there is ample reason to believe that an error here would not have affected Cureton's sentence.  Indeed, there are multiple statements throughout the record and his sentencing transcripts to indicate that Cureton would have received the same sentence regardless of any changes to his Guidelines range.  At Cureton's sentencing, Judge Murphy stated:

> [T]o tie up a young woman and kick, beat her, and threaten to cut her, and to bring other people in to frighten her, and then to call her family, just a horrible, horrible, horrible experience for everyone involved is—is cold and vicious almost beyond description. I would have given you a life sentence if the statute authorized it irrespective of what the guidelines provided for in this case.

*Cureton*, 739 F.3d at 1045.  Judge Hendon reiterated this sentiment at his resentencings:

> It's quite something different to be someone who beats the life out of somebody because they made the horrendous mistake of dropping some money on their way to meet up with – because they are to do something forbidden. That's what makes people like Mr. Cureton very dangerous to the community.

> (Case 106, Doc. 227, p. 37)

> [T]his case is more about the violent case that occurred over the lost money and the violence surrounding the victim who was held against her will who went through all of the torture associated with having a knife held against certain body parts, a gun held against her head, a ransom request made. All of that is very, very serious. And so you take that kind of violence, which I don't think anybody in the community that's looking to reduce sentences having to do with drugs would in any way suggest that his sentence needs to be reduced because we have somebody who's involved in the drug business and we've got a change in attitudes about drugs. That's just not consistent with the arguments that they make about why we need to change our thinking about drug crime. … they would say that case points out one of the types of cases that you wouldn't want to reduce the sentence. That kind of violence, that tangentially would not be the kind of case where you would want to reduce a sentence.

(Case 106, Doc. 255, pp. 23-24).

Most recently, in his March 21, 2018 Order, Judge Herndon stated that "any sentence other than that previously imposed by this Court would be so insignificant as to be a travesty of justice." (Case 106, Doc. 268).  Thus, under the specific circumstances here, the Court finds that any error would not result in prejudice or a miscarriage of justice, let alone a basis to support an ineffective assistance of counsel claim.

Alternatively, should a contrary finding be made that such error was not harmless, and that *Ruth* provides a viable standalone claim for relief, the Court finds that Cureton's arguments are procedurally defaulted.  "A claim not raised on direct appeal generally may not be raised for the first time on collateral review and amounts to procedural default.  *White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021) (citing *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016).

Cureton had notice of the Government's intent to use this conviction in November 2010, when the Government filed its § 851 Information (Case 106, Doc. 39), and did not challenge the use of this prior conviction at his sentencings of his appeals.  *See Cureton*, 739 F.3d 1032 (arguing error on direct appeal for allowing evidence of an uncharged robbery, receiving multiple § 924(c) convictions despite single use of firearm, and objection to § 924(c)(1)(A)(ii) enhancement for brandishing a firearm); *Cureton*, 845 F.3d at 324 ("Cureton appeals his conviction for using a firearm during a crime of violence. He contends that the crime of making a ransom demand in violation of 18 U.S.C. § 875(a) does not qualify as a "crime of violence" under 18 U.S.C. § 924(c)."); *Cureton*, 887 F.3d at

319 (affirming § 924(c) conviction following district judge's limited consideration of *Dean,*
*581 U.S. 62*).

Although he briefly argued at his resentencing that his drug conviction should be
reduced based on changing drug level weights (Case 106, Doc. 255, p. 16) and *Alleyne*
(Case 200, Doc. 172, p. 27), Cureton did not specifically raise any issue with his prior state
convictions or its use in his criminal history or for an enhancement.  Thus, to overcome
his procedural default and obtain § 2255 relief, he "must show either cause for the default
and actual prejudice from the alleged error, or that he is actually innocent."  *White,* 8 F.4th
at 554 (citing *Bousley v. United States,* 523 U.S. 614, 622 (1998).  Cureton has not argued
that he is actually innocent.  Nor has he argued or established good cause for his default
and actual prejudice.  As shown above, Cureton had fair notice of and an opportunity to
challenge the use of his predicate offense during his criminal proceedings and appeals,
yet he did not.  Further, at the time he was sentenced, a challenge to his predicate offense
was neither novel nor foreclosed.  *See, e.g.,* *White,* 8 F.4th 547.  Nor can Cureton overcome
this default by showing a "fundamental miscarriage of justice", a "high bar that requires
a showing of actual innocence."  *Id.*

Finally, the Court again reiterates, that under the specific circumstances here,
Cureton's sentencing judges continued to maintain that no change in law or alleged
errors would compel a contrary sentence than what was imposed.  Thus, upon review of
the multitude of arguments raised in Cureton's motion, amended motion, and various
supplements, Cureton is not entitled to relief under 28 U.S.C. § 2255.

## Disposition

34

For these reasons Cureton's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence is **DENIED**.  The Clerk is **DIRECTED** to enter judgment in favor of the United States and against Petitioner Thomas Cureton.

The Court further **DECLINES** to issue a certificate of appealability.  Rule 11(a) of the Rules Governing Section 2255 Proceedings requires a district court entering a final order adverse to a petitioner to issue or deny a certificate of appealability.  28 U.S.C. § 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  This standard requires the petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); see also *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012). The undersigned concludes that Cureton has not satisfied his burden of showing that he was entitled to relief on the merits of his petition. Reasonable jurists would not find this conclusion debatable, thus a certificate of appealability will not issue.

**SO ORDERED.**

Dated: March 31, 2023

DAVID W. DUGAN
United States District Judge